48 CCPA

**Application of Angelo B. CASTAGNOLA.**

**Patent Appeal No. 6603.**

United States Court of Customs and Patent Appeals.

Dec. 22, 1960.

Rehearing Denied Feb. 21, 1961.

Charles O. Bruce and Edward Brosler, Berkeley, for appellant.

Clarence W. Moore, Washington, D. C. (D. Kreider, Washington, D. C., of counsel) for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

The applicant appeals from the decision of the Board of Appeals affirming the rejection of claims 1–5, no claims being allowed, in application serial No. 543,850, filed October 31, 1955, which is a continuation-in-part of serial No. 318,436, filed November 3, 1952.

The invention relates generally to foundry flask equipment for sand mold casting and more particularly to the sand mold pattern plate used in forming the molding cavities. In the fabrication of sand molds the pattern plate is interposed between two generally rectangular frames, the bottom frame or drag and the upper frame or cope. Attached to each side of the pattern plate are the patterns, usually made of wood, representing respective halves of the article to be cast. When sand is poured into the frames, packed, and tamped, molding cavities, corresponding to the respective halves of the articles, are formed in the sand. Upon separation of the mold halves the pattern plate, together with the pattern, may be removed, leaving the finished mold which retains its shape due to moisture when green sand is used or due to a binder when dry sand is used. After removal of the pattern plate, the cope and drag may be retained or they may be replaced by a special frame, but in either case, during reassembling of the sand mold halves, the problem is to exactly align the bottom half with respect to the upper half. The invention is directed to that problem.

Applicant provides projections and depressions around a substantial portion of the pattern plate adjacent its border, so

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of*

*Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

that when the mold halves are reassembled, the projections and depressions formed in the mold halves interlock, producing exact alignment and preventing any relative shift. The shift-stopping projections and depressions are located in that portion of the mold, between the mold edge and the mold cavities, which is normally present for the purpose of providing a wall of sufficient thickness to prevent run-off when the casting is poured. The application says:

"Along the boundary between the pattern mounting area 19 and the border 21, the plate is formed with a plurality of hollow projections 27 extending alternately to either side of the plate, so as to form in the side and end walls of the respective halves of a sand mold 28, accurately fitting interlocking projections 29 of substantial size, which alternately penetrate each half of the mold.

"This does not interfere with the normally usable area of the pattern plate, in that it is conventional procedure not to locate pattern components within a minimum of one to one and a half inches from the walls of the cope and drag, to avoid run off of metal during casting. This defines a strip 31 within and adjacent the border, such strip in turn defining the maximum predetermined usable pattern area of the particular plate. Such usable area will of course vary with plates of different sizes, but for any size plate, is readily predeterminable by the inch to inch and a half margin allowed as a safeguard against run off during casting. The hollow projections may therefore be defined as located exclusively along a narrow strip lying adjacent the border and at least partially surrounding the maximum predetermined usable area within said central pattern mounting area, though in the preferred form, the predetermined usable area will be completely surrounded by such narrow strip and included hollow projections."

Claims 1 and 5 are exemplary and read:

"1. A pattern plate comprising a plate having a central pattern mounting area bounded by a border, and a plurality of hollow projections extending from said plate, exclusively within a narrow strip lying adjacent said border and at least partially surrounding a maximum predetermined usable area within said central pattern mounting area.

"5. A pattern plate comprising a plate having a central pattern mounting area bounded by a border provided with aligning means at each end of the plate, and integral hollow projections extending alternately to either side of said plate, said hollow projections being located entirely within a strip of substantially an inch to an inch and a half in width, running within said border and adjacent thereto, said projections extending along said strip for the greater portion of the length of the strip."

The only office action in the printed record is the examiner's final rejection, apparently a first action final, as the examiner states therein that the claims are substantially the same as those in the parent case. The sole reference relied on is:

Christianson 1,428,359 September 5, 1922.

Christianson's disclosure is directed to sand mold pattern plates and to preventing relative displacement of the mold sections which are initially separated by the pattern plate. The pattern plate is provided with projections and depressions, forming in the sand mold corresponding "projections and depressions which register with each other and interlock the mold sections." As to the location of these shift-preventing means, the reference states:

"The projections and indentations 5 are conveniently arranged in positions which do not interfere with the proper attachment of patterns to the parting boards. As indicated particularly in Fig. 3, such projec-

tions and indentations are arranged between the several patterns adjacent to the flask sections, both at their sides and ends, the positions of the projections and indentations being just inside of a continuous flat rim 6 which rests against the edge of the flask sections."

Christianson's Fig. 3 shows a rectangular pattern plate having a border which is occupied by the frames while the mold is being formed. Six patterns which appear to be for pistons for internal combustion engines are shown in dotted lines, arranged in two columns of threes, within the mold area bounded by the border. Also within the mold area are six pyramidal projections adjacent to and spaced around the border, two being adjacent each of the long sides and one adjacent either end. A portion of each projection extends into an area between adjacent piston patterns.

The board affirmed the examiner's rejection of the claims as being unpatentable over Christianson. Its analysis of the claims was, in part, as follows:

"We fail to see why the space surrounded by the projections of Christianson's pattern plate would not meet the limitation "a maximum predetermined usable area within said central pattern mounting area" if it is desired to locate the pattern within the space surrounded by the strip in which Christianson's projections are located. Nor do we see any reason why the strip in which Christianson's projections are located may not be an inch or one and a half inches in width if the size of the pattern plate is such that projections of adequate size may be placed in a strip having such dimensions. We note in this connection that appellant admits that the width of the strip is not critical. Furthermore, admitting arguendo that the limitation to the effect that the strip surrounds "a maximum predeter-

mined usable area within said central pattern mounting area" defines a departure from Christianson's pattern plate by reason of the fact that the projections of this plate extend into the pattern area, we are of the opinion that this departure is devoid of patentable significance because it involves no invention to limit the projections to a narrow zone in order to provide more room for the patterns."

On this question of patentability over Christianson, the appellant's basic contentions [1] are: (1) that his concept is contrary to the suggestions of the prior art of which Christianson is typical, and (2) that the unobviousness of applicant's departure from the prior art is evidenced by commercial success, unsolicited requests for licenses and, finally, satisfaction of a long felt need.

Applicant says that the prior art, including Christianson, has followed definite basic teachings, to wit:

"(1) that a pattern plate must provide a flat narrow strip around the pattern area; (2) that to realize maximum usable area for patterns with due regard for discouraging run-off between the engaging border edges of the half molds, such flat narrow strip must be of the order of an inch to an inch and a half in width; (3) that the pattern elements be judiciously arranged in the pattern area while allowing for disposition of known non-shift means among the pattern elements in the pattern area."

He also says:

"In contrast to the Christianson plate, appellant's pattern plate, with its "non-shift" projections confined along the narrow surrounding strip, entirely outside of the "maximum usuable pattern area", eliminates for all time the problem of locating the pattern elements with due regard for the subsequent location of stop-

1. Appellant's California attorneys filed a voluminous brief but did not appear at the hearings.

shift elements between such pattern elements."

Additional advantages are said to be: increased effective plate capacity, increased resistance against slippage and increased resistance to run-off.

Notwithstanding these advantages attributable to appellant's concept, and even assuming commercial success, we fail to find error in the board's analysis of the claims. Manifestly, appellant is not entitled to claims which read on the prior art or obvious modifications thereof. He says a "structural distinction" over Christianson exists because claims 1–3 require that the projections be positioned "exclusively within a narrow strip" which "partially * * * [surrounds] a maximum predetermined usable area." The language in claims 4 and 5 relied on is "said hollow projections being located entirely within a strip of substantially an inch to an inch and a half in width, running within said border and adjacent thereto." He does not tell us, nor do we see, how this language overcomes the board's rejection; he only says that it does.

The stop-shift means in Christianson are "just inside" the border, that being the continuous flat rim upon which the edges of the flask sections rest. Appellant, at least for purposes of argument, does not deny that a portion of Christianson's stop-shift means are within a one and a half inch strip, but he argues that Fig. 3 of the patent requires that those means extend between the patterns. We disagree with the latter proposition. We do not think that Christianson requires one skilled in the art to extend the protrusions between the patterns. To the contrary, when arranging the stop-shift means so as not to interfere with the patterns, it would be obvious to one of ordinary skill in the art to place them entirely within the one to one and a half inch area. The claims require nothing more and would be clearly unpatentable over such a structure.

The claims are drawn to a pattern plate which, as broadly recited in the claims, is anticipated by or involves only obvious modifications of Christianson. Christianson's hollow projections extend "normal to the plane of the plate" as recited in claim 2. As shown in Christianson's drawings, certain projections may extend in opposite directions, the equivalent of or at the least a matter of obvious choice over "projections extending alternately to either side of said plate" as recited in claim 3. And, finally, the projections extend along a "greater portion" of the strip in which they lie as recited in claim 5.

Since we are unable to find any error in the board's construction of the claims, its decision is affirmed.

Affirmed.